# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JIMMY L. HICKS,

      Plaintiff,

vs.                                              Civil No. 00-1638 LH/WWD

LARRY G. MASSANARI, ACTING
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1. This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed June 13, 2001 **[Doc. 9]**.[1] Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security denying the Plaintiff's applications for social security disability insurance benefits ("DIB") and supplemental security benefits ("SSI"). Plaintiff is currently age 30 and alleges a disability which commenced on October 2, 1996, due to club feet, degenerative muscular function in lower legs and loss of cartilage in knees.

    2. The Administrative Law Judge ("ALJ") found that Mr. Hicks could not return to past relevant work performed in the light to heavy category, but that he still has the ability to perform sedentary work, and is not disabled according to the grids. The Appeals Council denied Mr. Hicks' request for review of the ALJ's decision, thus the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

---

[1] The motion package was actually filed with the Court on August 28, 2001, although the motion was served on June 13, 2001.

He has worked in the past as a residential instructor in a health care facility, a mechanic's assistant, a retail sales representative, a pizza delivery driver and a food preparer for an airline catering service. Tr. at 114.

3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

4. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ failed to elicit testimony from a VE, or refer to other vocational evidence and erroneously relied instead on the grids; (2) the ALJ failed to make a sufficient credibility finding; and (3) the ALJ failed to consider the combination of impairments.

5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. § 423 (d)(1)(A)) and 1382c(a)(3)(A))

6. Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).[2]

---

[2] At the first four levels of the evaluation, the claimant must show: (1) that he is not working; (2) that he has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of

2

7. At step five, the last step in the sequential analysis, the burden shifts to the Commissioner to show that the claimant has a residual functional capacity ("RFC") to do work in the national economy other than past relevant work. Thompson at 1487 (citations omitted). The Medical-Vocational Guidelines ("grids") are used at this step to determine whether disability exists. 20 C.F.R. Part 404, Subpt. P, App. 2. The grids reflect the existence of jobs in the national economy at various residual functional capacity ("RFC") levels by incorporating administrative notice of occupational publications and studies. 20 C.F.R. §§404.1566(d); 416.966(d). The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §2000(e)(2).

8. Mr. Hicks has multiple congenital deformities, including bilateral club foot and right jaw bone malformation. He has had multiple surgeries for these conditions. He has lost some body mass due to atrophy, has lost some leg function, and has had digestive tract surgery for colon blockage. At the time of the hearing, Plaintiff was wearing braces on both legs to increase his stability and also uses a hearing aide.

9. Plaintiff complains that he cannot work primarily due to loss of muscle strength and movement in his lower extremities, as well as chronic back pain. He told the ALJ that he can walk and stand for 30 minutes at a time, and can sit for an hour and a half. He has trouble trying to lift a 20 pound weight off the floor. Tr. at 52

**First Alleged Error**

---

impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he is unable to perform work done in the past. At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

10. Plaintiff alleges that the ALJ failed to elicit testimony from a VE, or refer to other vocational evidence and erroneously relied instead on the grids. In his decision, the ALJ thoroughly reviewed the medical reports and findings for each of Plaintiff's alleged impairments. Although he recognized that Mr. Hicks' impairments were significant enough to preclude a direct reliance on the grids, the ALJ also found that Plaintiff could perform a wide range of sedentary work, which requires "only occasional standing and walking." Tr. at 29.

11. The record contains substantial evidence to support the ALJ's conclusion that Plaintiff has the RFC to perform sedentary work. Despite Mr. Hicks' numerous deformities which required repeated treatments or surgeries, the ALJ noted that his "overall condition" did not preclude him from working at least at sedentary jobs, and that they were long-standing impairments which did not prevent Plaintiff from leading a "relatively active life for many years." Tr. at 27-28.

12. Medical reports showed that Plaintiff's chronic back pain had not significantly worsened over the last several years, Tr. at 28, 261; that he had restricted motion in both feet but otherwise had full range of motion in his extremities with weakness on knee extension and left ankle movements, Tr. at 28, 191-92; and that his emotional problems regarding anger management and frustration with his attempts to get disability benefits were addressed short-term with no evidence of further documented treatment after June 1998. Tr. at 256-59.[3]

13. As the ALJ noted, Mr. Hicks' most serious problem at the time of the hearing was his TMJ disease and arthritis of the TMJ joints, for which he was probably going to require

---

[3] The ALJ noted that Plaintiff stated in a medical treatment form completed a month prior to the administrative hearing, that he was going to start mental health counseling on October 9, 1998. Tr. at 26, 138.

further surgery.[4] His hearing loss was not severe and was effectively improved with the use of a hearing aide, and his hypertension, asthma, and intestinal disorder are controlled with medication.

14. The findings from both an RFC assessment completed by a non-examining and non-treating physician in August 1997, and a work-related assessment completed in May 1998 by an examining physician were consistent with the requirements for sedentary work. Tr. at 197, 253.

15. Plaintiff does not challenge the ALJ's finding that Mr. Hicks can perform sedentary work with occasional standing and walking, but contends rather that this finding stands for less than the full range of sedentary work. Thus, the ALJ should have consulted a vocational expert ("VE"). Plaintiff also points out that although the ALJ stated that the grids were used only as a "framework" or "guide," Tr. at 32-33, he actually relied on the grids conclusively.

16. Defendant argues that Plaintiff's limitation to occasional standing and walking does not reduce his ability to perform sedentary work because such limitations are consistent with the definition of sedentary work. Thus, vocational testimony was not required where a finding was made that Plaintiff could perform the full range of sedentary work.[5]

17. The ALJ expressly stated that the grids could not be "applied directly" because of Plaintiff's nonexertional impairments. When both exertional and nonexertional impairments diminish a Plaintiff's RFC, the Commissioner "must produce expert vocational testimony or other similar evidence to establish the existence of jobs in the national economy." Cruse v. U.S. Dept.

---

[4] About ten years before the hearing, Plaintiff had surgery done to remove bone from the upper and lower jaw in an attempt to correct the deformity which was causing him to have problems opening his mouth and chewing. Tr. at 56, 134.

[5] Sedentary work involves a certain amount of walking and standing. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. SSR 96-9P.

of Health & Hum. Serv., 49 F.3d 614, 619 (10th Cir. 1995); Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted) (if claimant's nonexertional limitations are significant enough to reduce further her work capacity, the ALJ may not rely upon the grids but instead must give full consideration to all relevant facts, including vocational expert testimony if necessary, in determining whether the claimant is disabled).

18. In this case, however, although the ALJ found that these nonexertional impairments -- such as hypertension, musculoskeletal pain, asthma, hearing loss, and emotional problems – were not significant enough to interfere with the performance of a "wide range of sedentary work." Tr. at 32. I find that the ALJ used the grids appropriately, avoiding blind reliance on the grids but rather using them as a framework and looking to the relevant facts, as required under the regulations.   Because the ALJ did not find that these impairments reduced the occupational base, Tr. at 32, a vocational expert was not required.

19. As discussed above, the record supports the ALJ's findings regarding RFC.  Further, the ALJ incorporated the medical evidence (e.g., the reports of Dr. Beato and Dr. Gattis) into his reasons for not finding Plaintiff's nonexertional impairments to be significant. Tr. at 32.

20. I note that in Burns v. Apfel, 145 F.3d 1345, unpubl. opin., (10th Cir. 1998), the case attached as an exhibit to Plaintiff's reply, the medical evidence indicated that plaintiff could not perform certain aspects of sedentary work. The Burns court stated that "If plaintiff cannot perform all functions of sedentary work as it is defined by the regulations, then he cannot perform the full range of sedentary work, a vocational expert should have been called, and the grids should not have been applied conclusively." That case is unhelpful to Mr. Hicks' position, since the record in this case shows that he can perform all the requirements of a wide range of sedentary

work.

21. Therefore, I find that the ALJ did not err when he did not elicit vocational testimony, and did not err in his use of the grids.

**Second Alleged Error**

22. Plaintiff contends that the ALJ failed to make a sufficient credibility finding, specifically that the ALJ failed to discuss the medical evidence. I agree with Defendant that the ALJ evaluated the medical evidence and the record as a whole, in light of Plaintiff's symptoms and alleged functional and postural limitations, including his back pain and decreased muscle strength; pain and difficulty using his knee, ankle and feet; TMJ problems; asthma; episodes of frustration and anger; and hearing loss. The ALJ did discuss the medical evidence pertaining to each of these impairments as it related to Plaintiff's credibility, Tr. at 21 (under ¶ 5, at 21-27).[6]

23. Several factors are relevant in determining the credence given to a claimant's statements of disabling pain, including the levels of medication taken and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence. Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir.1988).

24. The ALJ noted that the medical evidence supported Plaintiff's allegation of difficulty

---

[6] These pages in the ALJ's decision also discuss the evidence as it relates to Plaintiff's RFC, although ¶ 6 in the decision is more specific to RFC. The regulations do not require a particular format for a credibility inquiry, as long as the decision is supported by substantial evidence based on the record as a whole and the correct legal standards were applied. See Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1028 (10th Cir.1994).

using his legs. However, the evidence also indicates that an examining consultant found that the difficulty did not necessarily preclude Mr. Hicks from performing all work, but rather that he might be suited to lighter work. Tr. at 22, 190.

25. Dr. Brown opined that Plaintiff's knee problems were felt to be nothing serious, but rather a result from the "wear and tear" from chronic foot problems. Dr. Brown recommended that Plaintiff use over-the-counter medication (ibuprofen) for pain, and physical therapy to increase strength. Tr. at 24, 233.

26. The ALJ did not err in determining that Plaintiff's mental impairment did not affect his ability to work. The ALJ completed a Psychiatric Review Technique Form, Tr. at 34-37, which accurately reflects the evidence from the treatment notes from the University of New Mexico Mental Health Center. Tr. at 256-59.

27. The ALJ also considered Plaintiff's daily activities, noting that Mr. Hicks shops for food, drives a car, visits friends, builds model cars as a hobby, in July of 1990 had started lifting weights again, and as of July 1998, cared for his two children while his wife worked. Tr. at 31, 122, 188, 263.

28. I find that the ALJ made a sufficient credibility finding.

**Third Alleged Error**

29. Plaintiff alleges that the ALJ failed to consider the combination of impairments or give reasons in support of his step three finding.

30. The Commissioner has a duty to make specific and well articulated findings as to the effect of the combination of impairments. Hargis v. Sullivan, 945 F.2d 1482, 1491 (10th Cir. 1991).

31. I find that the ALJ conducted an appropriate and sufficient step three finding. He discussed medical evidence with regard to each of Plaintiff's alleged impairments, finding that they did not meet listing-level impairments, Tr. at 21, and that Plaintiff could still perform "simple, routine sedentary work." Tr. at 31. The ALJ made the same inquiry into Plaintiff's nonexertional limitations. Tr. at 31.

32. I find the ALJ's step three inquiry to be legally sufficient. See Ellison v. Sullivan, 929 F.2d 534, 537 (10thCir. 1990) (ALJ's consideration of testimony in combination with discussion of various impairments sufficient to demonstrate he considered combined effect).

33. In sum, I find no merit to Plaintiff's asserted grounds for error.

**Recommendation**

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing, filed June 13, 2001 **[Doc. 9]**. be denied and this cause of action dismissed with prejudice. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

UNITED STATES MAGISTRATE JUDGE